**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

AUDRA NICOLE SMITH and BRITTANY GRAY, *individually and on behalf of those similarly-situated*,

Plaintiffs,

v.

TRADEWATER POINTE, LLC and CONCORD HEALTH SYSTEMS MANAGEMENT GROUP, INC.,

Defendants.

Case No. 4:25CV-130-GNS

**JURY TRIAL DEMANDED**

## CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Come Plaintiffs Audra Nicole Smith and Brittany Gray, by and through counsel, and, for their Class Action and Collective Action Complaint Under the Fair Labor Standards Act, 29 U.S.C. § 201 e*t. seq.* ("FLSA") and Kentucky Wages and Hours Act, K.R.S. § 337.275 *et seq.* ("KWHA"), against Defendants Tradewater Pointe, LLC (hereafter "Tradewater") and Concord Health Systems Management Group, Inc. (hereafter "Concord," Tradewater and Concord are together "Defendants"), state as follows:

### I. Introduction to the Action

1. Defendants had Plaintiffs and similarly-situated employees work more than forty hours in a workweek, but then failed to pay the full overtime rate of pay owed to the employees under the FLSA and KWHA. Specifically, Defendants employed Plaintiffs and other non-exempt employees at Defendants' nursing home facilities in Kentucky and paid them hourly for their work. However, Defendants did not pay the correct amount of overtime compensation for employees' overtime work. Instead, Defendants paid Plaintiffs and the similarly-situated employees multiple

types of compensation for their work performed, but only took into account certain of those types of compensation (while improperly disregarding others of those types of compensation) when calculating the overtime rate of pay of Plaintiffs and similarly-situated employees.

2. With respect to Concord, the proposed class of similarly-situated employees consists of all employees who, with respect to any one or more workweek for which the regular payday occurred in the last three years (a) worked 40 hours or more in such workweek while (b) employed in Kentucky (c) by any entity managed by Defendant Concord, including Tradewater, Dawson Pointe, LLC (doing business as Dawson Springs Health and Rehabilitation), and/or Ridgewood Terrace, LLC (doing business as Ridgewood Terrace Health and Rehabilitation Center) (the "Nursing Homes" and each a "Nursing Home"), (d) in a position classified by the employer as non-exempt under the FLSA, and (e) who were not paid all overtime compensation owed as a result of Defendant Concord causing the employer to improperly excluding certain types of compensation for work performed when calculating the overtime rate of pay.

3. With respect to Defendant Tradewater, the proposed class of similarly-situated employes consists of all employees who, with respect to any one or more workweek for which the regular payday occurred in the last three years (a) worked 40 hours or more in such workweek while (b) employed in Kentucky (c) by Tradewater, (d) in a position classified by Tradewater as non-exempt under the FLSA, and (e) who were not paid all overtime compensation owed as a result of Defendants improperly excluding certain types of compensation for work performed when calculating the overtime rate of pay.

4. As a result of Defendants' violations of the FLSA and KWHA, the Court should award the employees their unpaid overtime compensation, liquidated damages in an additional equal amount, and attorney's fees and other litigation expenses.

## II. Jurisdiction and Venue

5. This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiff's claims arise under federal law, including 29 U.S.C. § 216(b).

6. This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under the Kentucky Wages and Hours Act ("KWHA") as they are related to Plaintiff's claims under the FLSA; they form part of the same case or controversy and arise from the same set of operative facts as Plaintiff's claims under the FLSA.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) as Defendants operate a nursing home located in Dawson Springs, Hopkins County, Kentucky within the District of this Court and Plaintiffs worked for Defendants at that facility.

## III. Parties

8. Defendant Tradewater Pointe, LLC is a for-profit Kentucky limited liability company; upon information and belief, Defendant Tradewater may be served by service of process on its Registered Agent, James Lowry, at 2850 N. Main St., Madisonville, KY 42431.

9. Plaintiffs have each been employed by Defendant Tradewater working at Tradewater's nursing home in Dawson Springs, Kentucky for a portion of the three-year period preceding the filing of this Complaint. Plaintiffs' consents to join this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibits 1 and 2.

10. Throughout her employment with Defendant Tradewater, each Plaintiff worked for Defendant Tradewater in the Commonwealth of Kentucky and her work was governed by the FLSA.

11. Defendant Concord Health Systems Management Group, Inc. is a for-profit Kentucky corporation; upon information and belief, Defendant Concord may be served by service of process on its Registered Agent, Brenda Lowry, at 2850 N. Main St., Madisonville, KY 42431.

12. During all times relevant, Defendant Tradewater was an employer as defined in 29 U.S.C. § 203(d) and an enterprise engaged in commerce or in the production of goods for commerce as defined in 29 U.S.C. § 203(s).

13. Defendant Tradewater employs and has employed in the last three years other non-exempt employees in the Commonwealth of Kentucky and, like Plaintiffs, deprived those employees of overtime compensation owed under the FLSA and/or KWHA by not paying those employees the correct overtime rate of pay for their overtime work.

14. Upon information and belief, Concord controls the payroll practices of each of the Nursing Homes and are joint employers with the Nursing Homes of Plaintiffs and the similarly-situated employees employed by the Nursing Homes.

15. The employees working at each Nursing Home receive paychecks from that particular Nursing Home listing that particular Nursing Home as the employer[1]; however, upon information and belief, Defendant Concord controls the payroll practices of each Nursing Home as a joint employer with the Nursing Home and causes each Nursing Home to pay its non-exempt employees a lower overtime rate of pay than required by the FLSA and KWHA by having each Nursing Home offer compensation to employees for work performed by those employees, but

---

[1] Because Plaintiffs were not employed at any of the Nursing Homes other than Tradewater, this Complaint does not assert claims against the Nursing Homes other than Tradewater. However, claims against others of the Nursing Homes may be asserted in an amended complaint upon employees employed by those Nursing Homes becoming parties to this action. Although the Nursing Homes other than Tradewater are not defendants at this time, this Complaint does seek relief against Defendant Concord relating to work performed at the Nursing Homes by employees of the Nursing Homes because Defendant Concord was a joint employer with the Nursing Homes with respect to that work.

improperly not consider that compensation in calculating the overtime rate of pay, as described further below.

16. Therefore, the non-exempt employees of each Nursing Home are similarly-situated to Plaintiffs with respect to Plaintiffs' claims against Defendant Concord in that, like Plaintiffs, the non-exempt employees of each Nursing Home are each employed by a Nursing Home which is a joint employer with Defendant Concord and were deprived of overtime compensation by common payroll practices Defendant Concord enforces at all of the Nursing Homes.

## IV. Facts

### A. Plaintiffs Were Entitled to Overtime Compensation.

17. Throughout her employment, each Plaintiff worked a position that was non-exempt under the Fair Labor Standards Act.

18. Specifically, each Plaintiff worked at Defendant's nursing home, caring for residents of the nursing home.

19. Defendant Tradewater paid each Plaintiff a base hourly rate for Plaintiff's work for Defendant Tradewater; Defendant Tradewater did not pay Plaintiffs a salary.

20. Defendant Tradewater itself categorized each Plaintiff as an employee whose work was non-exempt under the FLSA and KWHA.

21. When Defendant Tradewater credited each Plaintiff with having worked more than 40 hours in a workweek, Defendant Tradewater would pay each Plaintiff for the hours worked a rate of one and one-half times her hourly rate of pay, taking into account certain (but, as discussed below, not all) of her compensation for work performed.

### B. Defendants Did Not Pay the Correct Overtime Rates of Pay, Depriving Employees of the Overtime Compensation Employees Had Earned for their Overtime Work.

22. However, Defendants did not pay overtime rates of pay correctly.

23. Specifically, Defendants failed to pay overtime compensation because it used an improperly low "regular rate" to calculate the overtime rate of pay, in violation of the FLSA and KWHA.

#### 1. The Regular Rate Standards

24. Under 29 U.S.C. § 207(e) and 29 C.F.R. § 778.107 *et seq.*, Defendants were required to pay Plaintiffs and the similarly-situated employees, for each hour worked in excess of forty in a workweek, "not less than one and one-half times the regular rate at which he is employed."

25. This "regular rate" is the "keystone" to calculating the appropriate rate of overtime compensation and is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945), *quoting Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40 (1944).

26. The "regular rate" "must be drawn from what happens under the employment contract," and "requires inclusion in the 'regular rate' of 'all remuneration for employment paid to, or on behalf of, the employee' except payments specifically excluded by paragraphs (1) through (7) of that subsection." 29 C.F.R. § 778.108, quoting 29 U.S.C. § 207(e)

27. "Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates." 29 C.F.R. § 778.115.

28. Further, where an employer pays bonuses, unless the bonus "qualif[ies] for exclusion from the regular rate as" a "discretionary bonus[], gift[ or] payment[] in the nature of [a] gift[] as defined in 29 U.S.C. § 207(e) and 29 C.F.R. §§ 778.11 through 778.214]," the bonus "must be totaled in with other earnings to determine the regular rate on which overtime pay must be based" to avoid the bonus being treated as "an evasive bookkeeping device." 29 C.F.R. § 778.208.

29. A bonus is not excludible as "discretionary" unless "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments…." 29 C.F.R. § 778.211(a).

30. "If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it." *Id.* at (b).

31. "For example, any bonus which is promised to employees upon hiring … would not be excluded from the regular rate under this provision of the Act." *Id.* at (c).

32. "Most attendance bonuses,… bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category; in such circumstances they must be included in the regular rate of pay." *Id.*

33. Where a bonus is not payable unless an employee remains employed for a particular period of time, and thus the employee's entitlement to the bonus cannot be ascertained until the end of the period, the employer may delay calculating the amount of additional overtime compensation owed until the bonus is in fact earned; however, "[w]hen the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of

compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week." 29 C.F.R. § 778.209.

**2. Plaintiffs Were Paid Additional Compensation in the Form of "Extra Hours of Pay" Which Was Improperly Ignored in Calculating Overtime Rates of Pay.**

34. Each Plaintiff was told by Defendants that she would be paid based on a "Baylor Plan."

35. Defendants explained to each Plaintiffs that this meant that, if she was assigned to work weekend shifts and completed three twelve-hour shifts (i.e., twelve hours including lunch break), she would be paid forty "hours" for the work during those three twelve-hour shifts, and that she would be paid additional hours for any work in the week beyond the three twelve-hour shifts.

36. Three twelve-hour shifts do not, of course, add up to total forty hours.

37. In effect, then, what Defendants were promising Plaintiffs was that Plaintiffs would be paid at a higher effective rate per hour by being paid more "hours" than the actual number of hours Plaintiffs in fact worked.

38. When Plaintiffs would work more than the three scheduled shifts, Defendants would not pay Plaintiffs at an overtime rate of pay for the first four such hours.

39. Further, when Plaintiffs would continue working (i.e., worked more hours than four beyond the three scheduled shifts), Defendants would begin paying a higher rate which Defendants purported was an "Overtime" rate of pay, but the overtime rate of pay was not one and one-half times Plaintiffs' regular rate of pay.

40. Instead, the "Overtime" rate of pay ignored that Plaintiffs had in fact earned **both**

40 “hours” for the first 36 hours of work in the workweek **and** additional compensation for hours 37-40 in the workweek.

41. For example, attached hereto as Exhibit 3 is a copy of Plaintiff Gray’s “paystub” received relating to her pay for work for Defendant Tradewater during her work during the two weeks of April 12, 2025 until April 18, 2025.

42. Upon information and belief, Defendants include two full workweeks (i.e., the period Defendants use to calculate when overtime work is being performed) in each bi-weekly pay period, and Exhibit 3 reflects two full workweeks.

43. Exhibit 3 reflects that, during the two weeks reflected, Ms. Gray was paid for a total of 93 “hours” and 45 “minutes.”

44. Of the 93 “hours” and 45 “minutes,” only 5 hours and 45 minutes were paid at an overtime rate of pay, and the other 88 “hours” were paid at a non-overtime rate of pay.

45. Defendants in effect were paying Ms. Gray for 44 “hours” of compensation for the first 40 hours of her work in each workweek reflected in Exhibit 3

46. Upon information and belief, the 5 hours and 45 minutes of overtime compensation shown on Exhibit 3 was paid because Plaintiff Gray in fact work 5 hours and 45 minutes of actual work beyond 40 hours in a workweek over the course of the two workweeks shown on Exhibit 3.

47. Thus the “hourly rate of pay” reflected on Exhibit 3 for the 44 “hours” was actually not in every case Ms. Gray’s full compensation for an actual hour’s worth of work, but in at least some cases payment for less than one hour of work.

48. Stated another way, Ms. Gray earned, for each hour she actually worked, more than the “hourly rate of pay” reflected on Exhibit 3.

49. Another way of viewing Exhibit 3 is that certain of the “hours” shown on Exhibit

3 do not represent hours worked at all but were in effect a bonus payment for Ms. Gray completing the three shifts.

50. Ms. Gray earned, during the first forty hours of her work in each workweek reflected in Exhibit 3, both forty “hours” of “Regular Hours” pay plus four “hours” of “Misc Hours” pay.

51. While, due to varying rates paid for Ms. Gray’s “Regular Hours” pay, it is not possible to determine the exact regular rate from Exhibit 3 alone because one cannot attribute an exact number of “Regular Hours” at each payrate to each of the two workweeks reflected in Exhibit 3, Exhibit 3 nevertheless shows that Defendants miscalculated the overtime rate of pay and paid less than the regular rate of compensation.

52. Specifically, the lowest possible “regular rate” that could apply in either of the two workweeks shown in Exhibit 3 would occur if Ms. Gray had earned all of the lower-rate-paying “Regular Hours” reflected on Exhibit 3 in one of the workweeks, and all of the higher-rate-paying “Regular Hours” reflected on Exhibit 3 in the other of the workweeks.

53. Even more specifically, if in one of the workweeks reflected in Exhibit 3 (“Week A”), Ms. Gray was paid for her first forty hours of work 4 “hours” at $12/“hour”, 3 “hours” and 55 “minutes” at $18/“hour”, 6 “hours” and 34 “minutes” at $19.00/“hour”, 25 “hours” and 31 “minutes” at $20/“hour”, and 4 “hours” of “Miscellaneous Hours” at $20.00 per “hour,” she would be paid a total of $833.60 for her first forty hours of work in Week A, meaning she was paid an average compensation of $20.84 per hour for her first forty hours of work in Week A.

54. If the scenario described in the preceding paragraph occurred, Ms. Gray would be paid for her first forty hours of work in the other workweek reflected in Exhibit 3 (“Week B”) a total of $880.00 (40 “Regular Hours” at $20/”hour” and 4 “Miscellaneous Hours” at $20/”hour”),

meaning she was paid an average compensation of $22.00 per hour for her first forty hours of work in Week B.

55. Under that scenario, based on the forms of compensation shown on Exhibit 3 alone, Ms. Gray should have been paid overtime compensation of at least $31.26/hour for each hour of overtime work in Week A, and $33.00 per hour of overtime compensation in Week B.

56. It is also possible from review of Exhibit 3 alone that, due to Plaintiff Gray working at multiple rates in both workweeks reflected in Exhibit 3, Plaintiff Gray's overtime rate of pay, based on the forms of compensation shown on Exhibit 3 alone, would have been at least somewhere between $31.26 and $33.00 for each of the two workweeks.

57. In any event, Exhibit 3 reflects that Defendants underpaid overtime compensation, paying only $30.00/hour for the overtime work reflected on Exhibit 3.

**3. Defendants Employ Numerous Employees on the "Baylor Plan."**

58. Defendants employ and have in the last three years employed (and Defendant Concord has with respect to the Nursing Homes caused them to employ) many other employees on the same "Baylor Plan" compensation arrangement whereby employees are paid additional "hours" for working certain schedules (generally weekend schedules that are considered undesirable as people like to have time off of work on the weekend).

59. Upon information and belief, Defendants undercompensated these similarly-situated employees in the same way as they undercompensated Plaintiffs; Defendants improperly disregarded the additional "hours" paid to those other employees for working certain schedules in calculating those other employees' overtime rates of pay.

**4. Defendants Improperly Excluded Other Compensation Paid for Work Performed in Calculating the Overtime Rate of Pay.**

60. Upon information and belief, Defendants failed in other ways to include all of the

compensation paid to Plaintiffs and the similarly-situated employees for work performed in calculating the overtime rate of pay.

61. Plaintiffs have set forth above specific manners in which Defendants did not correctly follow the "regular rate" principles that the FLSA and KWHA require employers to follow in determining the correct overtime rate of pay; however, to be clear, Plaintiffs allege herein generally that Defendants did not follow those principles, and seeks all unpaid overtime compensation which Defendants should have paid but did not pay, whether or not the failure arose from one of the more specific manners described above.

**C. Defendant's Violations of the FLSA Were Willful.**

62. Upon information and belief, Defendants were at all times conscious and aware that they were not paying overtime compensation correctly; their violations of the FLSA were willful.

**D. The FLSA Applies to the Work of the Employees.**

63. The work of Plaintiffs and the similarly-situated employees of operating the Nursing Homes' nursing homes involved interstate commerce, including but not limited to regularly completing medical record documentation to ensure payments to Defendants (and/or the applicable Nursing Home) involving multiple states, and Defendants are therefore subject to the FLSA with respect to Plaintiffs and the similarly-situated employees.

64. In the alternative, each Nursing Home is subject to the FLSA with respect to all employees of Defendant.

65. Upon information and belief, at all relevant times, each Nursing Home's annual gross volume of sales made or business done has exceeded $500,000.00.

66. Further, each Nursing Home employs two or more employees who, as part of their work, handle goods and/or materials that have been transported in interstate commerce.

67. Accordingly, each Nursing Home meets the definition of an enterprise engaged in commerce or in the production of goods for commerce under 29 U.S.C. § 203(s).

68. Upon information and belief, Defendants Concord, Hyman and Zanziper were each a joint employer with each Nursing Home, and controlled the Nursing Homes' payment and nonpayment of overtime compensation to the Nursing Homes' employees.

69. For instance, attached hereto as Exhibit 16 are emails amongst these defendants relating to employment at various Nursing Homes, including emails relating to Facility Daily Labor reports.

## V. Collective Action Allegations Relating to Defendant's Violation of the FLSA.

70. Plaintiffs bring this action pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of herself and other similarly-situated employees.

71. Plaintiffs anticipate filing a motion for notice to the similarly-situated employees, and will more fully define the requested scope of the notice and proposed collective in that motion.

72. Plaintiffs further reserve the right to define and/or re-define the proposed collective group prior to the Court's ruling at the second (post-discovery) stage of determining the collective group of similarly-situated employees under the FLSA, as may be warranted, appropriate and/or necessary.

73. Plaintiffs and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendant's previously described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime compensation for hours worked over forty (40) during the workweek.

74. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendant's common employee compensation, timekeeping and payroll practices, including:

a. whether Defendants have engaged in a pattern or practice of failing to include all compensation earned for work performed in calculating the overtime rate of pay, in violation of the FLSA;

b. whether the conduct of Defendants was willful;

c. whether Plaintiffs and members of the proposed collective group are entitled to lost wages, liquidated damages and the other relief requested.

75. Defendants failed to compensate Plaintiffs and the similarly-situated employees overtime compensation at time and a half (1½) the employee's regular rate as required by the FLSA for all hours worked in excess of forty (40) per workweek.

76. The claims of Plaintiffs are similar to those of the members of the proposed collective group, in that Plaintiffs have been subject to the same conduct as members of the proposed collective group and Plaintiff's claims are based on the same legal theory as members of the collective group.

77. The Collective members are victims of Defendant's unlawful compensation practices and are similarly situated to Plaintiffs in terms of job duties, pay and employment practices.

78. Defendant's failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice and is not dependent on the personal circumstances of any individual employee. Thus, Plaintiffs are similarly situated to the members of the Collective.

79. The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records.

80. The similarly situated employees may be readily notified of the instant litigation

through direct means, such U.S. mail, email, text messaging and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.[2]

## VI. Class Action Allegations Relating to Defendant's Violation of State Law Pursuant to Federal Rule of Civil Procedure 23.

81. Plaintiffs bring Counts II of this lawsuit individually and as a class action pursuant to Fed. R. Civ. P. 23 under the Kentucky Wages and Hours Act on behalf of herself and all similarly-situated current and former employees of any of the Nursing Homes who was not paid the full compensation owed for such employee's overtime work which should have been paid within the last three years, because Defendants failed to pay the full, correct overtime rates of pay.

82. Plaintiffs are members of the class they seek to represent.

83. Defendants failed to pay Plaintiffs and the members of the class they seek to represent wages for work performed, as described herein, in violation of the KWHA.

84. Under the KWHA, employers are required to pay wages to employees, including overtime compensation to non-exempt employees for overtime work performed by such employees.

85. As Plaintiffs and the similarly-situated employees were non-exempt, Defendant's refusal to pay Plaintiffs and Class Members overtime compensation at a rate of compensation 1.5

---

[2] To be very clear and ensure that Defendants are aware, with respect to Plaintiffs and individuals who opt-in to this action and who incur damages after the filing of this action as a result of Defendants continuing its illegal practices after the filing of this Complaint, (a) such damages will be sought in this action and (b) any such continuation of the illegal practices by Defendants after the filing of the Complaint will be used by Plaintiffs as further evidence of Defendants' willfulness and lack of good faith in violating the FLSA prior to the filing of this action.

the regular rate of pay (taking into account all compensation for work performed) violated the KWHA.

86. Upon information and belief, the Rule 23 Class is sufficiently numerous that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

87. All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). Namely, all members of the Rule 23 Class share common questions, including whether, as a result of failing to properly calculate the "regular rate" of pay, Defendants failed to pay employees wages (including overtime compensation) owed.

88. Plaintiff's claims are typical of the claims of the Rule 23 Class, thus satisfying Fed. R. Civ. P. 23(a)(3) typicality. Defendant's failure to pay Plaintiffs overtime compensation was not the result of any circumstances specific to the Plaintiff. Rather, it arose from Defendant's common pay policies of not paying the full amount of overtime compensation owed, which Defendants applied generally to the employees of the Nursing Homes, despite the fact that Plaintiffs and the similarly-situated employees were non-exempt and entitled to overtime pay.

89. Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class.

90. Plaintiffs have retained competent counsel experienced in representing classes of employees in lawsuits against their employers alleging failure to pay statutorily required overtime compensation, thus satisfying Fed. R. Civ. P. 23(a)(4).

91. By failing to pay Plaintiffs and Class Members the full amount of overtime compensation earned, Defendants have created the circumstance under which questions of law and fact common to the Rule 23 Class members predominate over any questions affecting only

individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiffs should be permitted to pursue the claims alleged herein as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).[3]

**COUNT I**

**Violation of the FLSA: Failure to Properly Pay Overtime Compensation**
**(On Behalf of Plaintiffs and the FLSA Collective)**

92. All previous paragraphs are incorporated as though fully set forth herein.

93. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate. *See* 29 U.S.C. § 207(a)(1).

94. Defendants are subject to the wage requirements of the FLSA because each Nursing Home is an employer under 29 U.S.C. § 203(d) and Defendants Hyman, Zanziper and Concord are joint employers with each Nursing Home.

95. At all relevant times, each Nursing Home was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

96. During all relevant times, Plaintiffs and the members of the FLSA Collective were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

97. During all relevant times, Plaintiffs and the Collective Members were not exempt from the requirements of the FLSA.

---

[3] To be very clear and ensure that Defendants are aware, with respect to any members of the proposed Rule 23 class who incur damages after the filing of this action as a result of Defendants continuing its illegal practices after the filing of this Complaint, (a) such damages will be sought in this action and (b) any such continuation of the illegal practices by Defendants after the filing of the Complaint will be used by Plaintiffs as further evidence of Defendants' willfulness and lack of good faith in violating the KWHA prior to the filing of this action.

98. Plaintiffs and the Collective Members each worked more than forty (40) hours in one or more workweeks without full overtime compensation and are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

99. Defendants knowingly failed to properly compensate Plaintiffs and the Collective Members by failing to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

100. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

101. Pursuant to 29 U.S.C. § 216(b), employers, such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT II**

**VIOLATION OF KY. REV. STAT. ANN. §§ 337.275, *ET SEQ*.**
**BY NONPAYMENT OF WAGES**

**(On Behalf of Plaintiffs and proposed Rule 23 Class)**

102. All previous paragraphs are incorporated as though fully set forth herein.

103. Plaintiffs bring this claim on behalf of all members of the proposed Rule 23 Class.

104. Kentucky state law requires that covered employees be compensated for every hour worked in a workweek. *See* KY. REV. STAT. ANN. §§ 337.275, *et seq*.

105. KY. REV. STAT. ANN. § 337.285 requires that employees receive overtime compensation "not less than one and one-half (1-1/2) times" the employee's regular rate of pay for all hours worked over forty in one workweek. *See also* 803 Ky. Admin. Regs. 1:060.

106. During all times material to this complaint, each Nursing Home was a covered employer required to comply with KY. REV. STAT. ANN. § 337.010(1)(d), and Hyman, Zanziper and Concord were each a joint employer of each Nursing Home.

107. During all times material to this complaint Plaintiffs and the Rule 23 Class were covered employees entitled to the protections of the KWHA. *See* KY. REV. STAT. ANN. § 337.010(1)(e).

108. Defendants were not exempt from providing Plaintiffs and Class Members the KWHA's overtime benefits because the employees do not fall within any of the exemptions set forth therein. *See* KY. REV. STAT. ANN. § 337.285(2).

109. Defendants violated the KWHA with respect to Plaintiffs and the Rule 23 Class by, *inter alia*, failing to compensate them for all hours worked in excess of forty per workweek at one and one-half their "regular rate" of pay.

110. In violating the KWHA, Defendants acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

111. Pursuant to KY. REV. STAT. ANN. § 337.385, Defendants, because they failed to pay employees the required amount of wages and overtime at the statutory rate, should be found liable to the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages.

112. Pursuant to KY. REV. STAT. ANN. § 337.385, Plaintiffs and Class Members are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seeks the following relief on behalf of herself and all others similarly situated:

a. The issuance of process, and the bringing of Defendants before the Court;

b. An order directing prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members (Plaintiffs will file a motion more particularly describing the relief sought);

c. An order after Plaintiffs is provided with an opportunity for discovery certifying under Rule 23 a class of similarly-situated employees whose rights were violated by Defendants under state law, and thereafter a judgment granting the class all relief available under applicable state law, including unpaid wages, liquidated damages, and attorney's fees and other litigation expenses, to the class;

d. A jury trial on all issues of fact;

e. A judgment against Defendants in favor of Plaintiffs, the members of the FLSA Collective and/or the Rule 23 Class for unpaid overtime compensation, to the fullest extent permitted under the law;

f. A judgment against Defendants in favor of Plaintiffs, the members of the FLSA Collective and/or the Rule 23 Class for liquidated damages to the fullest extent permitted under the law;

g. A judgment against Defendants in favor of Plaintiffs, the members of the FLSA Collective and/or the Rule 23 for litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

h. Such other and further relief to which Plaintiff, the FLSA Collective and/or the Rule 23 Class is entitled or which this Court otherwise deems just and proper.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiffs*